TERESA BURGESS, Adm'x of THOMAS BURGESS, *vs.* JOHN Lloyd, Adm'r of THOMAS JANNEY and others.

Where a party has offered in evidence the docket entries in an equity case, which showed that an injunction had been dissolved, he cannot prove by *parol* that the case had *abated before* the dissolution.

Under an issue joined upon a plea, that the obligors in an injunction bond had prosecuted the suit with effect, and performed all the orders and decrees of the *court of chancery* therein until it abated, evidence of the abatement of a suit between the same parties in *another court,* is not admissible.

A plaintiff declared generally upon an injunction bond, reciting that the obligors "*had obtained*" an injunction to stay execution of a judgment, condi-

Burgess *vs.* Lloyd.

tioned *"to prosecute" the injunction "with effect"* without assigning breaches : the plea was *general performance* : the plaintiff *replied,* assigning as a breach that the defendant *"did not prosecute with effect,"* concluding with a verification : the defendant *rejoined* that *"he did prosecute with effect,"* concluding to the country, to which the *similiter* was entered. HELD :

1st. That this *form* of pleading was correct, and that the *onus* of proving the prosecution of the writ of injunction with effect, was *upon the defendant.*

2nd. That the extent of the plaintiff's claim is sufficiently established by the judgment recited in the bond.

3rd. Both parties were estopped from denying the recital of the bond that the writ had issued, but not from averring the termination of the suit : if the defendant by his *plea* had relied upon the pendency of the injunction, the plaintiff would have been bound by the recital that an injunction had been obtained, unless he had taken issue upon the plea and shown by the record that the injunction suit had terminated.

4th. The plea of performance of the condition of the bond, necessarily implied that the suit had terminated, the condition being to prosecute the writ *already obtained,* or pay the debt.

Where new matter is alleged, the party must generally verify, but where the plea produces a direct affirmative or negative, it should conclude to the country whether the affirmative of the issue is held by plaintiff or defendant, and the proof of the affirmative rests on him who asserts it.

The conclusion does not depend upon whether the averment be affirmative or negative, but upon the inquiry whether the affirmation or denial form an issue : sometimes a negative averment must be made which can be met only with an affirmation of what is denied with a tender of issue.

The conclusion does not determine the *onus probandi,* for the law often casts it upon the party concluding to the country where he can conclude in no other way, because the issue must be made on his pleading, and if he holds the affirmative he must prove it, no matter what the conclusion may be.

The defendant may sometimes so shape his defence as to relieve the plaintiff from showing more than a *prima facie* case by his pleadings, and the *onus* of proof may be shifted by the *form* of the pleadings.

A party will in some cases be held to the proof of matters, which but for his having relied upon them in pleading, he need not have established by proof.

If a defendant in his plea of *non est factum,* specially recites the facts of his defence, he brings all the proof on himself, whereas by using the general form of that plea, he throws upon the plaintiff the proof of whatever is necessary to make the instrument his deed.

It is competent for the court to instruct the jury upon the sufficiency of the pleadings.

Where injunctions are obtained under the act of 1723, ch 8, sec. 5, application must be made to the county court, and that court must *approve* the bond.

Though this act does not declare what is to be done with the bond when taken and approved and makes no provision for recording it, yet it was intended it should remain in the clerk's office, "as a *supersedeas* to further proceedings," on the judgment restrained by the injunction.

An instruction by the court that signing, sealing and delivery of such a bond was sufficient, after having overruled a prayer affirming that acceptance by the court was necessary, is erroneous.

Delivery of the bond to the clerk does not in this case import acceptance and approval, because these depend upon the judgment and discretion of a tribunal or person other than the obligee, whose assent the law does not require.

But if the bond be tendered and remains where it should be if accepted, and parties act under it, it is evidence of acceptance and approval by the proper authority.

Where a bond is not required by law to be recorded, a copy is not evidence.

The attestation clauses to such a bond is of little importance on the question of delivery and acceptance, because it is not delivered to the obligee, but tendered to the court for its action, and is not the deed of the party until accepted, a matter of which the attesting witness may have no knowledge.

Acceptance may be evidenced by circumstances, such as the place where the bond is found, the endorsements upon it, and inferences fairly deducible from the facts of the transaction.

APPEAL from the Circuit Court for Charles County.

*Debt* by the appellees against the appellant, upon an injunction bond executed by Speake and Pye, principal obligors, and Burgess and Jones, as sureties, to Janney and Brown, in the penalty of $6000, dated the 18th of August 1819, and containing the following recital and condition.

"Whereas the above bound Speake and Pye have obtained an injunction to stay proceedings at law, on a judgment recovered against them in Charles county court, by the above named Janney and Brown, for the sum of $2911.95, current money, and costs : Now the condition of the above obligation is such, that if the said Speake and Pye shall prosecute the said writ of injunction with effect, and satisfy and pay as well the said sum of money and costs, as all costs, damages and charges that shall accrue in the chancery court, or be occasioned by the delay of execution on the said judgment, unless the court of chancery shall decree to the contrary, and shall in all things obey such order and decree as the chancery

Burgess *vs.* Lloyd.

court shall make in the premises, then the above obligation to be of none effect, else to be in full force and virtue. Signed, sealed and delivered in presence of *R. Semmes.*"

This is the second appeal in this case. The first is reported in 4 *Gill,* 187. The pleadings are important, and are fully stated in the opinion of this court.

*1st Exception.* The plaintiffs proved the handwriting of the deceased attesting witness to the bond, read in evidence the judgment of Janney and Brown against Speake and Pye from the docket entries in Charles county court, showing that the judgment was recovered at August term 1818, for $2911.95, with interest from the 18th of February 1817, till paid, and costs, and then rested.

The defendant then proved by the deputy clerk of the court, that the bond in suit was handed to him by the plaintiff's counsel, to be used on the trial of this case, and that it was found by witness among the papers and proceedings in a cause on the equity side of said court, in which Speake and Pye were complainants, and Janney and Brown defendants, and that no other bond has been or can be found among said proceedings. He, then, for the purpose of showing the circumstances under which the bond was found, read in evidence the docket entries in said cause, on the old equity docket of the court, showing that the bill was filed and injunction granted August 27th, 1819; that answers were filed and depositions taken; that on the 27th of October 1838, the administrator of Pye was summoned; and that on the 27th of March 1840, a final order for dissolution of the injunction was filed.

The defendant further offered to prove that said bill, filed on the 27th of August 1819, on the equity side of Charles county court, contained a prayer for an injunction against executing the judgment recited in the bond in suit, and that it was endorsed thus : "Filed the 27th day of August 1819, and ordered that injunction issue," no signature being attached to this endorsement, and there being no endorsement whatever on the bond in suit; and further offered to prove that Speake and Pye died prior to the 27th of October 1838, that there

never was any administration on the estate of Speake, but administration was granted on the estate of Pye, on the 17th of April 1838, for the purpose of showing that said suit abated and was never revived. But the court (WILLIAM MATTHEWS, Special Judge,) refused to allow said offered facts to be given in evidence for the purpose aforesaid, and to this ruling the defendant excepted.

*2nd Exception.* The plaintiff further proved by a competent witness, that witness was deputy clerk of Charles county court in 1819, and for many years before and afterwards, and that it had always been the practice of the clerk, under instructions of the court, to approve the securities on injunction bonds, and to take the certificate of the attorney in the case as evidence of the sufficiency of the securities. The evidence being closed the defendant offered the following prayers.

1st. That under the plea of general performance and the issue joined on the first breach replied thereto, the burden of proof is on the plaintiffs, and they cannot recover under this breach because there is no evidence of any breach of the bond, as averred by the plaintiffs in their said first breach.

2nd. That the second and third breaches assigned in the first replication of the plaintiffs to the defendant's first plea, are not sufficient, because said breaches do not aver that Speake and Pye did not prosecute said writ of injunction with effect.

3rd. That the plaintiffs cannot recover under the issue joined on the plea of *non est factum,* because there is no sufficient evidence of the execution of the bond in suit by the defendant's intestate.

4th. That the plaintiffs cannot recover under the issue joined on the plea of *non est factum,* because there is no sufficient evidence of the acceptance of the bond in suit by Charles county court.

5th. That to enable the plaintiffs to recover under the issue joined on the plea of *non est factum,* the jury must find from the evidence in the cause, that the bond in suit was accepted by Charles county court.

The court rejected all these prayers and instructed the jury, that if they believe from the evidence that the bond in suit was signed, sealed and delivered by Burgess, then the plaintiff is entitled to recover under the plea of *non est factum.*

To this rejection and to the instruction granted the defendant excepted. The verdict and judgment were in favor of the plaintiff for $6118.94, and the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Robert J. Brent* for the appellant.

The condition of the bond in this case is the same as that in *Morgan vs. Morgan,* 4 G. & J., 395, except that in that case the recital was that the obligors were "about to obtain an injunction," whilst this recites that the obligors "have obtained an injunction." Such a bond, the court said in that case, looked to an injunction suit in the Court of Chancery, and no failure to prosecute on the equity side of the county court could constitute a breach of the bond, and though they reversed the case on the pleadings they *refused a procedendo,* "because the plaintiffs could not recover on such a bond." And this decision was evidently based on the act of 1723, ch. 8, sec. 5. The present suit is substantially the same, but here is an attempt on the part of the plaintiffs ingeniously to escape the decision in *Morgan's case* by the *form* of pleading. It is said that by pleading by their replication that the defendants *had not* prosecuted their injunction with effect, the *onus* of proving there had been no breach of the bond is cast upon the defendants. Such was the ruling of the court below, thus deciding that the plaintiff can recover on such a bond without any proof of a breach of it, or any proof whatever but the bond itself.

Upon the former appeal in this case, (4 *Gill,* 187,) the defendant's pleas, which went to deny that an injunction had been obtained as recited in the bond, were overruled, because it was held that the obligors were *estopped* from denying any

fact recited in the bond.   This was all that was then decided:
there was nothing before the court then to show, as there was
in *Morgan's case,* and is now in the present record, that the
bond was filed on the equity side of the county court, and
therefore no recovery could be had upon it.

1st.  As to the rejection of the offered testimony in the first
exception, to show that the suit on the equity side of Charles
county court had abated by the deaths of Speake and Pye,
we concede it was properly rejected, on the hypothesis that
this bond cannot be construed as a bond to prosecute a case
between the parties in the *Chancery Court.*   But if the court
should reject this hypothesis and construe the bond to cover
an injunction in the county court, we contend that we ought
to have been allowed to show that the bill in that case abated,
inasmuch as the issue was joined on that fact and all evidence
pertinent to that issue was admissible.   9 *Gill,* 78, *Mitchell
vs. Williamson.*   That the death of the principal obligors will
not forfeit such a bond, and that the suit abated by their
deaths:   See 1 *Bland,* 1, *Ringgold's case.*   8 *Bac. Abr.,* 532.
6 *Hill,* 558, *Burkle vs. Luce.*   42 *Eng. C. L. Rep.,* 684,
*Morris vs. Matthews.*   At any rate, there could be no legal
action on the injunction until the proper parties were before
the court on proper proceedings to make them appear.   14
*Mass.,* 231, *Jenney vs. Jenney.*   1 *Bland,* 566, *Billingslea
vs. Gilbert.*

2nd.  Our *first* prayer should have been granted.   It assumes
that the *onus probandi* is on the plaintiff to establish the first
breach assigned in his replication to the plea of general per-
formance, and if such *onus* was on him we were entitled to
the instruction, as there is no evidence of any breach, unless
the proceedings in the county court can be considered as a
breach, which would be in the very teeth of the decision in
*Morgan vs. Morgan.*   The replication on such a bond as this
is equivalent to a declaration and must show a good cause of
action.   11 *G. & J.,* 166, *State vs. Gaither.*   The *onus* is on
the plaintiff to show a breach, though it involves a negative,
viz., that the injunction was not prosecuted with effect, and

he must show affirmatively that the injunction was dissolved or ended in some way. The most analogous case is that of a replevin bond, where the condition is to prosecute with effect, as here. Where the condition is merely to prosecute with effect, it is necessary to prove a judgment against the plaintiff in the replevin suit, or that the proceedings have been in some way determined. 2 *Saund. on Pl. & Ev.*, 800. 8 *Mees. & Wels.*, 477, *Jackson vs. Hanson.* In this last case it was held, that a breach of such a bond is improperly assigned: if consistent with the averments, the replevin suit may be still pending. In *Brackenbury vs. Pell*, 12 *East*, 588, Lord Ellenborough says: "We must presume that things exist in the same state, and that the suit is still continuing, unless the contrary be shown; it lay therefore upon the plaintiff to show that it was legally determined, so as to establish the breach alleged, that it was not prosecuted with effect." And this distinguished judge further ruled in the same case, that "the plaintiff should have shown how it (the replevin suit) ceased to depend." If the condition were "to prosecute with effect and without delay," a breach may be shown by proving delay, and judgment of *non pros.*, in that case, need not be proved. In *Karthaus vs. Owings*, 6 *H. & J.*, 138, it was held, that the words "prosecute with effect" in an appeal bond, meant, "prosecuting the appeal to a successful termination or a reversal of the judgment," and it must result therefrom that no breach is shown until the suit undertaken for is shown to be ended, and not in the way that the bond stipulated it should be. Now apply these authorities to this case. This bond, the only evidence offered by the plaintiff in support of his breach, recites, that "an injunction had been obtained," and the defendant is estopped from controverting this recital. Therefore, the bond shows a pending injunction obtained at its date. What has become of that case? Is it still pending or determined? If determined, how, and in whose favor? These are questions not answered by the plaintiff, and he calls on the defendant to prove that there was no breach. The presumption is, as Lord Ellenborough

24    v.7

states, that the injunction continues until the contrary is shown in proof. There can be no legal presumption that the injunction was dissolved, simply because the plaintiff has so alleged it, and in the absence of all evidence to support this material allegation. But it is said the plaintiff below is relieved from all obligation to establish his breach, because the affirmative of the issue is on the defendant, as he alleges that the injunction was prosecuted with effect; and so the court below decided, regarding rather the *form* than the *substance* of the issue. That a plaintiff must prove a negative, as in this case, where he "grounds his right of action upon a negative allegation, and where, of course, the establishment of this negative is an essential element in his case," is very clearly laid down as the rule, of which various examples are cited. 1 *Greenlf. on Ev.*, sec. 78. And so, where non-feasance or negligence is alleged in an action on contract, the burden of proof is on the party making the allegation, notwithstanding its negative character. 1 *Greenlf. on Ev.*, sec. 80. See also 1 *Starkie's Ev.*, 417, *note r.* The test, as to the *onus probandi*, is by inquiring who would fail in the absence of evidence on either side? See especially *Amos vs. Hughes*, 1 *Mood & Rob.*, 464, and *Millis vs. Barber*, 1 *Mees. & Wels.*, 427. It is very clear the plaintiff can show no breach of this bond, because in fact no such case was ever in the chancery court, and the fact now appearing on the evidence, and on the refusal of the plaintiff to show any other bond or any breach in testimony, we are entitled to a refusal of the *procedendo*, as much as in *Morgan's case*, where the fact appeared on the pleadings. It is very clear the recovery is without any proof of breach, the whole proof on the part of the plaintiff going to the execution of the bond. Even his proof of the judgment recited was idle and unnecessary, as it sufficiently appeared in the recital of the bond. Then the great question remains, can the obligee in an injunction bond recover without proof of a breach, or indeed without adducing any proof but the bond itself? If he can, the greatest injustice could be done, as in this case: if Speake and Pye had perpetuated the injunction in the

county court, the plaintiff could still recover, when, in fact, there had been no breach. If he has sustained a loss in this case, it is his own fault in not moving for a dissolution, unless a proper bond was filed.

3rd. The breaches involved in our second prayer are bad, because they may be true, and yet no breach of the bond; there is no averment that the injunction was not prosecuted with effect, or that the court ordered the payment, &c. 2 *G. & J.*, 442, 443, *Karthaus vs. Owings.* Such a prayer is a *quasi* demurrer, and the reason assigned is immaterial if the pleading is insufficient on other grounds.

4th. The remaining questions relate to the plea of *non est factum.* Our third prayer raises the question, whether there was sufficient evidence of the execution of the bond in suit. This bond is either a record or it is not a record. If a record, its execution should be proved by an official copy, attested by the custodiary thereof, and in that case all that the plaintiff would have to prove on this plea, is the identity of the obligor with the party named in the record of the bond. 1 *Dev. & Bat.*, 421, *Kello vs. Maget.* Oyer of an official or recorded bond, is gratified by the adduction of a certified copy. 5 *G. & J.*, 511, *Butler & Belt, vs. The State.* 7 *G. & J.*, 259, *Young vs. The State.* But here the plaintiff did not offer the official copy of the bond, but produced the original, and he must, therefore, prove its due execution, and *delivery* is part of the execution, and must be proved. 1 *H. & G.*, 416, *Union Bank vs. Ridgely.* Now here is no delivery to the obligees, but the delivery is made out by the production of the bond, from the clerk's office, among the proceedings in the equity suit. To make this a legal delivery, it must be the proper court for recording such a bond, and it must be *properly* recorded, so that an official copy would be evidence. 1 *H. & J.*, 448, *Reid vs. Wethered.* Under "*non est factum*," the defendant may prove:—1st. That the bond was originally void, as where a bail-bond is taken after return of the writ, or delivered as an escrow and the like. 2nd. That it was avoided by matter subsequent. 2 *Starkie's Ev.*, 270. And

it is said, that under *non est factum*, the defendant may prove that the condition of the replevin bond was not broken when the suit was instituted. 2 *Saund. on Pl. & Ev.*, 799. But it will be said that this bond was properly recorded in the county court, though it legally covers an injunction in the chancery court, under the act of 1723, ch. 8, sec. 5. And so I admit, that this bond could alone be taken and recorded under this act. But this act requires that application shall be made to the county court, who shall take sufficient security with two sureties. Conceding that the approval may be inferred from the signing and delivery, as ruled in *Milburn vs. The State*, 1 *Md. Rep.*, 11, yet there should at least be proof of the signature of the other security, if not of all the parties, for Burgess had a right to avoid his bond, unless all stated in the body signed, as in that case, he would be entitled to contribution, and here is no proof of the execution by the other parties. 4 *Cranch*, 219, *Pawling vs. United States*. But no inference of such acceptance or approval can be drawn from a delivery in the clerk's office, under the circumstances of this case. If it was shown to be signed and filed in the county court during its session, approval might be inferred, but in the absence of all evidence to show that the county court was in session, or ordered the bond to be filed, can we infer an acceptance? Is the finding of an unendorsed bond in the clerk's office evidence, *per se*, of an acceptance by the court? That such acceptance is necessary to the validity of the bond, and must be proved directly or inferentially, is established. 11 *G. & J.*, 387, *Bruce vs. The State*. 1 *Md. Rep.*, 15, *Milburn vs. The State*. Unquestionably, the county court are not to be presumed to have designed to approve such a bond as this, on a bill to be filed on the equity side of their court. The bond they should require is that prescribed for the chancellor by the act of 1793, ch. 75, sec. 3; and applied to the county courts, or the judges in vacation, by the act of 1814, ch. 94, secs. 1, 2. There is no evidence that the court prescribed the penalty, or approved the security, and the bond being found among the papers is not sufficient,

Burgess *vs.* Lloyd.

because such a bond has no legal location in an equity case in the county court, under the act of 1723. Nor can the filing of this bond in the proceedings of the county court control its construction or correct its recitals. 5 *H. & J.*, 61, *Morgan vs. Blackiston.* It is in law the case of a bond, such as required by the act of 1723, ch. 8, sec. 5, left in the county clerk's office to found an injunction in the High Court of Chancery, and no evidence whatever from which the approval by the county court can be inferred, and the bond must therefore be looked at alone. If it be said that there is evidence that the court approved this bond, then they have approved this as a bond to be filed in a cause in the county court, and such an approved bond could not be applied to such a case. 4 *G. & J.*, 395. Again, we must observe that a bond like this must be approved by the county court, whereas a bond to prosecute an injunction in the county court could be approved by one judge of the county court. *Acts of* 1814, *ch.* 94, *secs.* 1, 2, and 1793, *ch.* 75, *sec.* 3. Therefore, the filing of this bond among the papers of an equity cause in the county court, is, under the circumstances, no evidence that the county court approved the bond, but rather that it was approved by one judge in vacation, he intending to approve it as a bond for that case, especially when we find that the clerk filed the bond in that case, and the court was not shown to be then in session.

5th. In support of our fourth prayer, we refer to what has been said on the last point, as it seems to us to involve the same question, inasmuch as execution of a bond involves *delivery* and *approval.* If the *approval* of the bond be not involved in the question of execution, then this fourth prayer distinctly raises the question of *approval* by the county court, and we refer to our remarks on this question, as addressed to the third prayer. We have already considered the fifth prayer in discussing the third and fourth.

6th. The court's instruction is clearly erroneous, as it precludes all inquiry into the fact of acceptance or approval of the bond by the court. We need not repeat the argument on

this point.   We therefore submit, that upon this record there
can be no *procedendo;* because, it is manifest, the plaintiff
can never recover on this bond, as in point of fact, there never
was an injunction in the chancery court: and in point of
law, it cannot be applied to the injunction proceedings in the
county court, which it was supposed to cover by the same
blunder which was so fatal in the case of *Morgan vs. Morgan.*

*Thomas F. Bowie* and *John M. S. Causin* for the appellee.
1st.  The ruling of the court in the first exception was cor-
rect, for none of the facts *offered* to be proved by the defend-
ant were admissible under any issue in the cause.   The
defendant had proved by the docket entries that the cause had
*not abated,* but had been set down for final hearing, and the
*injunction dissolved* on the 27th of March 1840, and the *offer*
was to show by *parol* that the order of dissolution was not
rightly passed because the suit had abated *before* that time.
In other words the attempt is to attack the judgment or decree
of a court of competent jurisdiction by parol and collaterally,
which cannot be done except for fraud.  4 *Gill*, 115, *Hunter
vs. Hatton.*  4 *Md. Rep.*, 444, *Wilson vs. Ireland.*   But then
by the laws of Maryland, acts of 1797, ch. 114, sec. 4, and
1820, ch. 161, secs. 4, 5, 6, a suit is not *abated* by the death
of any of the parties to it.   See also *Alex. Ch. Pr.*, 101.
But again the offer was to show that the suit in Charles
county court had abated.   Now the issue joined upon the
sixth plea is, that the suit in *chancery had abated,* and can it
for a moment be maintained, that the offer to show that a suit
in *Charles county court* between the same parties had abated,
is admissible under this issue?

2nd.  The great question in this case, presented by the first
prayer in the second exception, is, upon which party, *under
the pleadings,* lies the *onus* of proof of the prosecution of the
injunction?   To determine this, it must first be ascertained
upon what the issue is joined in this case? and which party
holds the *affirmative?*   The plaintiff's replication simply
alleged, that the parties named in the bond *did not prosecute*

*with effect.* The defendant's rejoinder, averred that they *did prosecute with effect,* and tendered an issue to the country, and upon this *affirmative-rejoinder* issue was joined. Now who holds the *affirmative?* The *rejoinder* asserts that they *did prosecute with effect,* and is not this the affirmative? He who alleges must prove. We allege nothing but simply *deny,* whereas their allegation is of an *affirmative* and not a *negative.* The *form* of our replication that they *did not prosecute with effect,* is sanctioned by the Court of Appeals, in the case of *Karthaus vs. Owings,* 6 *H. & J.,* 139, and the same case in 2 *G. & J.,* 430. Now the general rule is, that he who asserts the affirmative of the issue must prove it, 1 *Stephens on Pl.,* 117. 1 *Greenlf. on Ev.,* sec. 74. In *Warfield vs. Walter,* 11 *G. & J.,* 85, where the issue in an action of *trespass de bonis asportatis* was joined, not on the defendant's plea of property, but on the replication of the plaintiff asserting the right of property to be in himself, it was held that he must support the allegation by proof. This case not only establishes the general proposition which we assert, but also that the *onus* of proof is changed by the *form* of the pleadings. See also 2 *H. & J.,* 39, *Morgan vs. Slade,* where upon the plea of *no assets,* it was held that the *onus* was upon the plaintiff who asserted it, though it was a negative. See also *Ibid.,* 281, *Wilson vs. Slade.* 2 *Ev. Har.,* 239, and 1 *Barn. & Cres.,* 150, *Catherwood vs. Chabaud,* in 8 *Eng. C. L. Rep.,* 45. The general rule is admitted by the other side, but the counsel says this case is an exception: but he has been very unfortunate in the selection of cases to support his proposition. In 12 *East,* 588, the case cited by him, the *plaintiff in his declaration averred that the suit was not prosecuted with effect,* and Lord Ellenborough said that having *affirmed* the proposition he must prove it. The bond is the gist of the action, and we admit that the affirmative is on us to *prove its execution,* and having done this we are entitled to recover, unless the matter in avoidance set up by the other side be sustained by proof, 2 *G. & J.,* 441. The bond was properly taken under the act of 1723, and is a good and valid bond. The

case is wholly unlike that of *Morgan vs. Morgan*, where the fact that the suit was begun in the county court, was spread out on the record by the pleas. Here there is nothing to show this court judicially what tribunal issued the injunction: *non constat*, there is not now pending in the *court of chancery* the very suit referred to in the bond. But whose fault was it that they selected the wrong forum? They got the benefit of their injunction under this bond : they restrained our judgment, and now say that we are estopped from recovering on the bond.

3rd. The second prayer was properly rejected, because it asks the court to instruct the jury upon the *legal insufficiency* of a plea, tending to no result : and because if the breaches objected to were not sufficient in law, they were liable to demurrer,· and are not to be reached by a prayer to the jury, 9 *Gill*, 77, *Mitchell vs. Williamson*. But if the first breach was sufficient, no prejudice resulted to the defendant from the ruling on this prayer, and it is therefore no cause for reversal.

4th. The other prayers relate to the plea of *non est factum*. There was evidence legally sufficient to warrant the finding of the execution of the bond. Proof of the handwriting of the attesting witness is sufficient if the witness is dead. 1 *Saund. on Pl. & Ev.*, 425. 1 *H. & J.*, 339, *Parker vs. Fassitt.* 7 *Do.*, 42, *Handy vs. The State.* *Ibid.*, 346, *Dorsey vs. Smith.* On the plea of *non est factum*, the *acceptance* of the bond is not in issue. But if necessary to be proven, it is sufficiently so in this case. By the act of 1793, ch. 75, sec. 3, the bond must be accepted and approved before the injunction is granted. Here the injunction was obtained on the bond ; the county court had the power to approve and accept it, and it was marked filed, and was found among the papers ; this is sufficient evidence of *acceptance* and *approval.* 7 *G. & J.*, 262, 263, 264, *Young vs. The State.* The act of 1723 does not say the bond shall be *endorsed* approved, or recorded, nor does it prescribe where it shall be kept. It was a bond given for our benefit, and we were entitled to the possession of it : it was taken from the papers in the case,

and this is sufficient proof of its delivery after proof of its execution. 1 *H. & G.*, 418, *Union Bank vs. Ridgely.*

5th. The instruction of the court was nothing more than that so far as the plea of *non est factum* was involved, there was sufficient evidence, if believed by the jury, of the execution of the bond. In this there was no error, for the reasons and authorities assigned above.

TUCK, J., delivered the opinion of this court.

This cause comes before the court on the following state of the pleadings, which have been amended since the former appeal, reported in 4 *Gill*, 187. The declaration is in the usual form, not assigning breaches. The defendant pleaded, first, general performance by Speake and Pye, to which the plaintiff replied, assigning three breaches, as follows : 1st. That Speake and Pye did not prosecute the injunction with effect; 2nd, That they did not pay the judgment and costs, mentioned in the recital of the bond; 3rd, That they did not pay all costs, damages and charges, occasioned by the delay of execution on the plaintiffs' judgment. These replications conclude with a verification. The defendants rejoined: 1st, That Speake and Pye did prosecute the writ with effect; 2nd, That they did pay the judgment and costs, mentioned in the bond; 3rd, That they did pay the costs, damages and charges, &c., concluding severally to the country; to each of which the *similiter* was entered. The pleadings on the plea of general performance were thus brought to issue.

The *second* plea averred that Speake and Pye prosecuted the writ with effect; that the court of chancery decreed that they should not pay the judgment and costs recited in the bond; and that they obeyed all the orders and decrees of that court, concluding with a verification : to which the plaintiff replied, that the principals in the bond did not prosecute with effect, and that the court of chancery did not decree that they should not pay the judgment and costs recited in the bond, concluding to the country, on which the *similiter* was entered.

The *third* plea, that they did prosecute with effect, and did

25      v.7

obey all orders and decrees of the chancery court, concluding with a verification, was also replied to by a traverse, that they did not prosecute with effect, and did not obey, &c., and tender of issue, on which issue was joined.

The *fourth* plea, *plene administravit*, and the *fifth*, no assets of Thomas Burgess were replied to, and issues framed in the usual manner.

The *sixth* plea averred, that Speake and Pye prosecuted the writ with effect, until they died, after which the suit in chancery abated; to which the plaintiff replied, that they had not prosecuted as stated, and that the suit had not abated, concluding with a verification.   The defendants' rejoinder to this replication reiterated the matters of the plea, and tendered an issue, which was accepted.

The *seventh* plea, *non est factum* by Burgess, was replied to by a traverse, and issue entered in the usual form.

We have noticed the pleadings with some particularity, because several of the questions raised in the court below, are to be considered with reference to the issues.

The first exception relates to the admissibility of certain evidence offered by the defendant, for the purpose of showing, that a case on the equity side of Charles county court, between Speake and Pye, and the obligees in the bond, had abated and was never revived, which the court rejected as inadmissible for that purpose.   We do not discover any error in this ruling of the court.   The defendant had himself offered evidence, by the docket entries, that the injunction in that equity case was dissolved on the 27th March 1840. Upon what principle could he be permitted to show, by parol, that the suit had abated before that time?   We think this question is substantially settled in 4 *Gill*, 192, 193.   But the offer was properly rejected for another reason.   The defendants' *sixth* plea, alleged the prosecution by the principals in the bond, and their performance of the orders and decrees of the *court of chancery*, until their death, by which the suit abated.   Evidence of the abatement of a suit between the same parties in another court, could not establish the issue joined on that allegation.   This exception is affirmed.

The second exception was taken by the defendant, to the refusal of the court to grant five prayers tendered by her, and to an instruction given by the court. The first of these prayers is confined, in terms, to the issue joined on the first assignment of breaches replied to the plea of general performance, and asserts that, under that issue, the burden of proof is on the plaintiff, and that he cannot recover under that assignment, because there is no evidence of any breach of the condition of the writing obligatory, as therein averred on the part of the plaintiff. The only question on this prayer, being, whether, under this issue, the burden of proving the prosecution of the injunction with effect, was upon the plaintiff or defendant?

We do not consider the course the pleadings have taken as obnoxious to the objections urged in behalf of the appellant. The plea of general performance, in these cases, denies the plaintiffs' right to recover, because the principals have performed all the conditions annexed to their obligation, and, for the purpose of giving certainty and precision to the issues, the law requires the plaintiff to assign particularly wherein the condition of the bond has been forfeited, to enable the defendant to plead more specially. In this case the plaintiff has adopted a short form of assigning breaches, which was approved in *Karthaus vs. Owings*, 2 *Gill & Johns.*, 430. And indeed, this and the other two breaches assigned in reply to the plea of general performance, were before the court on the former appeal, and must have been recognized as a proper mode of pleading, because the rejoinders to these breaches were held bad, on general demurrer, when, if the fault had been in the replication, the court would have ascended to the first error, going beyond the pleading demurred to, as they did in reference to the defendants' fifth rejoinder. Since that case, the same form of assigning breaches was employed in *Frantz vs. Smith*, 5 *Gill*, 280, in an action on an appeal bond, where the court decided that the recital of the judgment in the bond, relieved the plaintiff from the burden of offering the judgment in evidence. It is true that the plaintiff proved

that the appeal had not been prosecuted with effect, but no point was presented or decided on that part of the case. It is authority, however, to show that the defendant is estopped from denying the debt as recited in the bond, and that no proof of the judgment was necessary in this case.

The breach being well assigned, we have no doubt that the subsequent pleadings are correctly framed. The termination of the pleading, whether with an averment or to the country, has little to do with the question now under review. When new matter is alleged the party must generally verify; but where the plea produces a direct affirmative or negative, by denying the allegation in the declaration, it should conclude to the country, whether the affirmative of the issue is held by the plaintiff or defendant, and the proof of the affirmative rests on him who asserts it. *Union Bank vs. Ridgely*, 1 *H. & G.*, 415.

· The pleadings in an action of replevin serve to illustrate this rule. The plea of property in the defendant concludes with a verification, the replication asserts the right of property to be, not in the defendant, but in the plaintiff, and tenders an issue to the country, which is accepted. The burden of proof is on the plaintiff, and not on the defendant, although the pleading of the latter concludes with an averment, and that of the plaintiff is merely a traverse. *Cullum vs. Bevans*, 6 *H. & J.*, 470. 11 *G. & J.*, 80, *Warfield vs. Walter. Smith vs. Morgan*, 8 *Gill*, 134. The same principle governs in issues framed on the pleas of no assets, and *plene administravit*. They conclude with a verification, and the replications conclude to the country, yet, in both, the burden of proof is on the plaintiff, *Morgan vs. Slade*, 2 *H. & J.*, 38. *Wilson vs. Slade*, *Ibid.*, 281. It appears then, that the conclusion does not depend on the character of the averment, that is, whether it be affirmative or negative, but on the inquiry, whether the affirmation and denial form an issue. Sometimes, from the nature of the case and the form of the pleadings, in its earlier stages, a party must, of necessity, make a negative averment, with a verification, which can be

Burgess *vs.* Lloyd.

met only by an affirmation of what is previously denied, with a tender of issue; otherwise an issue might never be reached. Nor, as we have seen, does the conclusion of the pleading determine the *onus probandi*, for it often happens that a party concluding to the country, takes upon himself this burden, or more properly speaking, the law casts it upon him, in cases where he can conclude in no other way, consistently with established rules, because they must terminate in an issue on his pleadings, and if he holds the affirmative, no matter what the conclusion may be, he must prove what he alleges. *Wilson vs. Hodges*, 2 *East.*, 312. *Calder vs. Rutherford*, 3 *B. & B.*, 302.

Applying these rules to the case before us, there appears to be no incongruity in requiring the defendant to support an allegation in the rejoinder which she has not offered to verify, but has merely tendered an issue to the country. The plaintiff assigned that the principals did not prosecute with effect, in the language of the condition which they had undertaken to perform, presenting, as was said in 2 *Gill & Johns.*, 441, a *prima facie* case. The defendant, reaffirming her allegation in the plea, rejoined that they did prosecute with effect, tendering an issue. This conclusion here was necessary, because the negative averment of the plaintiff and the affirmation of the defendant formed an issue which could not be avoided, unless new matter were averred. Can there be a doubt that the affirmative averment is made by the defendant? If so, why may she not be held to proof of the allegation, according to the general rule, that he who holds the affirmative must prove it? We have been referred to exceptions to this rule, (1 *Greenlf. on Ev.*, secs. 78, 80,) but we think that they do not embrace this case, and there is no adequate reason for its becoming one. The plaintiff does not ground his right of action upon a negative allegation as an essential element in his case, as in the examples stated by the author. Nor does the negative averment involve a charge of criminal neglect of duty, or fraud, or the wrongful violation of possession of property. This case is not within the principle of any of the exceptions stated. The proof of the fact is not less in the power of the

defendant than of the plaintiff. If it exist at all, it is matter of record, equally accessible to both parties; and of the existence of which as a proceeding in chancery the bond affects the obligors with knowledge. The averment being on the side of the defendant, as matter in avoidance, equally within her reach, there appears to be quite as much reason for laying this burden on her as on the plaintiff, whereas if it were imposed on the latter, the rule of evidence adverted to would be violated.

But it is said, that a plaintiff should prove his cause of action, and that this party had no standing in court until he had shown damage by a breach of the condition. The extent of his claim is sufficiently established by the judgment recited in the bond. *Hardey vs. Coe,* 5 *Gill,* 193. *Ibid.,* 280. As to proof of the breach, it may be observed that a defendant sometimes so shapes his defence as to relieve the plaintiff from showing more than a *prima facie* case by his pleadings, and the *onus* of proof may be shifted by the form of the pleadings. So also a party will, in some cases, be held to the proof of matters, which, but for his having relied upon them in pleading, he need not have established by evidence. As an example, if a defendant, in his plea of *non est factum,* specially recite the facts on which the defence is based, although concluding to the country, he brings all the proof on himself; whereas by using the general form of that plea, he turns upon the plaintiff the proof of whatever is necessary to make the instrument his deed. *Union Bank vs. Ridgely,* 1 *H. & G.,* 417. 6 *Mod.,* 218. If the plaintiff had set out the proceedings in chancery in his replication, the burden of proving the breach as assigned would perhaps have been on him, but by using the short form, he leaves the defendant to show by his rejoinder that the obligation has been discharged either by a successful prosecution or by payment of the judgment, thus observing the caution suggested in 2 *G. & J.,* 443, not "to state matter which would come more properly from the other side." If the replication in that cause would have had that effect, we do not perceive why the same object may not be attained here. The counsel for the appellant, in this view of the case, contends, that the bond and the recitals show that an

injunction had issued, and he asks what has become of that case in chancery, because, as he says, if it be pending the bond could not be sued, and it is in support of this argument that the case in 12 *East.*, 585, was relied on. The doctrine there announced, that things are presumed to continue in a given state until the contrary appears, need not be questioned. The pendency of the proceedings did appear by the plea. But is that the case here? Both parties are estopped from denying that the writ had issued at the date of the bond, but they are not forever estopped from averring the termination of the suit. If the defendant had, in her plea, relied upon the pendency of the injunction, it cannot be doubted that the plaintiff would have been bound by the recital in the bond that an injunction had been obtained, unless he had taken issue to the plea and shown by the record that the injunction suit had terminated. But instead of this defence, she pleaded performance of the conditions of the bond, which, in this case, necessarily implied that the suit had terminated, because the condition was, not to obtain an injunction and prosecute it with effect, but so to prosecute the writ already obtained, or pay the debt.

It is not always clear on whom the law places the burden of proof. Rules of evidence must be applied according to their reason, and the principles of pleading applicable to the case. Both parties here rely on different rules, and we think that, consistently with their correct interpretation, the record shows a *prima facie* case in behalf of the plaintiff, which casts upon the defendant the proof of her defence as alleged in pleading.

The second prayer relates to the sufficiency of the second and third breaches assigned in the first replication to the plea of performance. It is competent for the court to instruct the jury upon the sufficiency of the pleadings. *Berry vs. Harper,* 4 *Gill & Johns.*, 467. *Warfield vs. Walter,* 11 *G. & J.*, 80. *Evans' Practice,* 408. But the breaches objected to are not, in our opinion, insufficient. They were before the court on the former appeal, and, as we have said, might have been held bad on the decision of the general demurrer if they had been deemed faulty. Besides, we think they are within the principle of the case of *Karthaus vs. Owings, 2 Gill & Johns.,*

446. They aver facts, which, if true, might have been avoided by rejoining matter that should properly come from the other side; that is, the successful prosecution of the injunction.

The third, fourth and fifth prayers, and the instruction of the court to the jury, involve points upon the issue joined, on the plea of *non est factum.* The counsel agree that this is a bond under the act of 1723, ch. 8, sec. 5, which provides, " That in case any person shall think fit to proceed in equity against any verdict or judgment rendered against him, on his application to the county court it shall and may be lawful for such county court to take sufficient security from such person, with two sufficient sureties, in not less than double the debt and costs recovered against him, for the due prosecution of a writ of injunction in that case, according to the form following;" and after setting out the form in the terms of the bond sued on in this case, the act declares, " that such bond, so given, shall be a sufficient supersedeas and stop to any further proceedings in that case, until the person against whom such chancery relief is proposed shall obtain a certificate from the chancellor, or his register, of the disallowance of an injunction in such case, or that such injunction has not been sued out of the chancery office within two months after such bond given, or if sued out, that the same is dissolved." It is plain, from the words of this act, that application must be made to the county court, and that the court must approve the bond. But it does not declare what is to be done with the bond when taken and approved, nor is there any provision for recording it. It would seem, however, that it was intended to remain in the clerk's office, as a " supersedeas to further proceedings in that case."

We are of opinion that there was testimony applicable to the questions presented by the *third* and *fourth* prayers, and that they were properly refused; but there was error in rejecting the *fifth* prayer, and also in the instruction given to the jury, that signing, sealing and delivery were sufficient, after having overruled the fifth prayer, that prayer affirming that acceptance by the court was necessary, because conceding, as contended by the appellee's counsel, that delivery imported acceptance

and approval, that instruction, after the refusal of the fifth prayer, was calculated to impress the jury with the belief, that the efficacy of the bond did not depend upon its approval by the court. We do not say that the instruction as given would have been erroneous if unaccompanied by the action of the court on the *fifth* prayer, because the opposite party might then, if deemed important, have asked the court to inform the jury what constituted a sufficient delivery in such cases. *Atwell vs. Mayhew*, 6 *Md. Rep.*, 10. After the court had refused to say that acceptance was necessary, and had decided that signing, sealing and delivery were sufficient, the appellant could not have expected the court, (even if he had asked it,) to have ruled that delivery included acceptance.

Delivery to the clerk does not import acceptance and approval, where, as in this case, these depend on the judgment and discretion of a tribunal or person other than the party named as obligee, whose assent the law does not require. If, however, it be tendered and remains where it should be, if accepted, and parties act under it, it is evidence of acceptance and approval by the proper authority. And this we take to be the reason and principle of the cases cited from 1 *H. & G.*, 430; 1 *Md. Rep.*, 11; 4 *Md. Rep.*, 444. The bond is not required to be recorded; a copy, therefore, would not have been evidence, as was allowed in *Young vs. State*, 7 *G. & J.*, 253. It was necessary to use the original to prove the *factum* of the instrument, though the acceptance and approval might depend on other testimony. The attestation clause in such cases is of little importance on the question of delivery and acceptance, because the bond is not delivered to the obligee but tendered to the court for its action, and is not the deed of the party until accepted as sufficient, a matter of which the witness to the bond may have no knowledge. The manner in which acceptance is to be evidenced is not prescribed. It may depend on circumstances: such as the place where the bond is found, the endorsements upon it, and inferences fairly deducible from the facts of the transaction. 7 *G. & J.*, 253. It is not our province to express an opinion on the weight of evidence. But from all the testimony applicable to this issue, the jury should

be satisfied of the *factum* of the bond and of its acceptance and approval by the court. Independently of general principles on this subject, we think this is the plain intent of the act under which this bond was taken. *Bruce vs. State,* 11 *Gill & Johns.,* 382.

Dissenting from the court below as to the last two rulings in the second exception, we reverse the judgment and order a procedendo.

*Judgment reversed and procedendo ordered.*